IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ARMARD DAVIS, | : | |
| | : | |
| Movant, | : | |
| | : | |
| v. | : | Case No. 5:21-cr-003-TES-CHW-4 |
| | : | Case No. 5:24-cv-486-TES-CHW |
| UNITED STATES OF AMERICA, | : | 28 U.S.C. § 2255 |
| | : | |
| Respondent. | : | |
| | : | |

## ORDER AND RECOMMENDATION

Before the Court is Movant Armard Davis's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. 542). For the following reasons, it is **RECOMMENDED** that the motion (Doc. 542) be **DENIED**. It is further **RECOMMENDED** that a certificate of appealability be **DENIED**.

## BACKGROUND

On January 12, 2021, Movant was indicted on one count of Conspiracy to Possess with Intent to Distribute Cocaine and Cocaine Base, one count of Possession with Intent to Distribute Cocaine Base, one count of Possession with Intent to Distribute Cocaine, one count of Conspiracy to Participate in an Animal Fighting Venture, and nine counts of Possession of Animals for Animal Fighting Venture. (Doc. 1). With the assistance of his retained counsel, Bruce Harvey, Movant waived indictment by the grand jury and pleaded guilty to a superseding information charging one count of Conspiracy to Possess with Intent to Distribute Controlled Substances under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) and one count of Conspiracy to Participate in an Animal Fighting Venture under 7 U.S.C §§ 2156(a)(1) and (b). (Docs. 455, 456, 457, 458). The plea agreement

explained that the conspiracy to possess count carried a maximum term of forty years' imprisonment, a maximum fine of $5,000,000.00, and at least four years supervised supervision, and the animal fighting count carried a maximum term of five years' imprisonment, a maximum fine of $250,000.00, and three years of supervised supervision. (Doc. 458, pp. 2–3).

As part of the plea agreement, Movant waived his right to appeal or collaterally attack his conviction and sentence under 28 U.S.C. § 2255, except for such collateral attacks based on a claim of ineffective assistance of counsel. (*Id.*, pp. 4–5). Movant initialed each page of his plea agreement and signed it on the final page beneath an acknowledgement that he had discussed the agreement with his attorney, fully understood the agreement, and agreed to its terms. (Doc. 458).

At the change of plea hearing, the Court addressed the appeal waiver contained in the plea agreement, and Movant confirmed that he freely and voluntarily waived his rights to appeal and collaterally attack his sentence, except for limited circumstances, by pleading guilty. (Doc. 512, pp. 9, 20). Movant stated that he understood that his sentence may be different than any estimate given to him by counsel, and that the Court could impose a harsher sentence than one in the advisory guideline range. (*Id.*, pp. 20–21). The Court also asked whether Movant had discussed his guilty plea with counsel, and Movant responded that he had and was fully satisfied with the advice counsel had given him. (*Id.*, p. 22).

Although he faced a maximum prison sentence of 40 years or 480 months, the presentence investigation report (PSR) indicated that Movant's sentencing guideline range was 168 to 210 months based upon a total offense level of 33 and a criminal history category of III. (Doc. 492, ¶¶ 127–28). Although the base offense level for the conspiracy to possess count was 32, Movant received a two-level enhancement for possessing a firearm and a two-level enhancement for his role in the offense. (*Id.*, ¶¶ 42–45). The base offense level for the animal fighting count was 16,

2

and he did not receive any enhancements for that count. (*Id.*, ¶¶ 48–53). Because Movant was convicted of more than one count, the Court grouped the counts pursuant to U.S.S.G. §§ 3D1.1(a) and 3D1.4. (*Id.*, ¶¶ 54–60). As such, Movant's combined adjusted offense level was 36. (*Id.*, ¶ 60). Movant then received a two-level decrease for acceptance of responsibility and a one-level decrease for entering a plea in a timely manner—creating a total offense level of 33. (*Id.*, ¶¶ 62–64). Counsel for Movant filed three objections, including objections to the firearm and role enhancements. (Doc. 482).

At sentencing, the Court asked movant if he had reviewed the PSR with his counsel, and he responded yes. (Doc. 517, pp. 2–3). Following exanimation of the co-case agent, the Court heard Movant's objections to the PSR. Movant's counsel objected first to the role enhancement, arguing that Movant did not exercise control over another to the point the enhancement is applicable. (*Id.*, pp. 53–54). Movant's counsel objected next to the firearm enhancement, arguing that the firearms were not Movant's. (*Id.*, pp. 62–63). The Court overruled both objections. (*Id.*, pp. 64–65).

Movant's counsel requested a downward departure of the sentencing guidelines and a sentence of 97 months. (*Id.*, pp. 73–74). Movant then addressed the Court and requested leniency. (*Id.*, pp. 74–76). Movant's counsel then presented Movant's mother who testified on behalf of Movant and requested leniency. (*Id.*, pp. 76–78). The Court determined that, based on Movant's total offense level and criminal history category, the advisory sentencing range was 168 to 210 months. (*Id.*, pp. 79–80). The Court sentenced Movant to 190 months on the conspiracy to possess charge and 60 months on the animal fighting charge to run concurrently. (*Id.*, p. 80). Judgment was entered on September 1, 2023. (Doc. 501). Movant then filed a Notice of Appeal through his

sentencing counsel which was subsequently dismissed pursuant to the appeal waiver in Movant's plea agreement. (Docs. 503, 528).

On December 20, 2024, Movant, *pro se*, filed this motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. 542). Movant subsequently filed a memorandum in support. (Doc. 555). The Government responded on March 21, 2025, arguing that the Court should deny Movant's motions. (Doc. 556). As discussed below, Movant's Section 2255 motion should be denied.

## DISCUSSION

Movant argues that his sentence should be vacated, set aside, or corrected pursuant to Section 2255 because he had ineffective assistance of counsel. As explained below, each of Movant's three grounds is without merit.

### I.    Movant Has Not Shown Ineffective Assistance of Counsel.

To prevail on a claim of ineffective assistance of counsel, Movant must establish by a preponderance of the evidence that (1) his attorney's performance was deficient, and (2) he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Chandler v. United States*, 218 F.3d 1305, 1312–13 (11th Cir. 2000). Movant must prove that his counsel's performance "was unreasonable under prevailing professional norms and that the challenged action was not sound strategy" to establish deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 381, 384 (1986) (citing *Strickland*, 466 U.S. 688–89). To show that counsel's performance was unreasonable, Movant must establish that no competent counsel would have taken the action in question. *Van Poyck v. Fla. Dep't of Corrs.*, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam); *Chandler*, 218 F.3d at 1315. There is a strong presumption that the

challenged action constituted sound trial strategy. *Chatelain v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1996). As for prejudice, Movant must show there is a reasonable probability that, but for counsel's inadequate representation, "the result of the proceeding would have been different." *Meeks v. Moore*, 216 F.3d 951, 960 (11th Cir. 2000) (quoting *Strickland*, 466 U.S. at 694). If Movant fails to establish that he was prejudiced by the alleged ineffective assistance, a court need not address the performance prong of the Strickland test. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

A. *Firearm enhancement*

Movant argues first that his counsel was ineffective for failing to argue at sentencing that the two-level firearm enhancement was inapplicable because the firearm at issue was unloaded. (Docs. 542, p. 4; 555, pp. 1–2). Movant directs the Court to U.S.S.G. § 2D1.1 comment n.11(A) for the proposition that the enhancement cannot apply when the firearm is unloaded. The language Movant cites to states in relevant part:

> The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1 comment n.11(A).

"The government bears the initial burden of showing, by a preponderance of the evidence, that a firearm was 'present' at the site of the charged conduct or that the defendant possessed it during conduct associated with the offense of conviction. *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017) (citing *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006)). Only if

the government meets that burden does the burden shift to the defendant "who must establish that a connection between the weapon and the offense was 'clearly improbable.'" *Id.*

In this case, the Government met its initial burden in showing that a firearm was present at the site of the charged conduct. Movant stipulated in his plea agreement that he was the sole owner of two .22 caliber rifles. (Doc. 458, p. 12). This is further supported by Special Agent Tyler Vanderberg's testimony at the sentencing hearing that there were two .22 caliber rifles located at the residence in question.[1] (Doc. 517, pp. 22, 42–43). As such, the burden shifted to Movant to show that a connection between the .22 caliber rifles and the conspiracy to possess charge was "clearly improbable." *George*, 872 F.3d at 1204. Movant not only failed to meet this "heavy burden of negation" at sentencing, *George*, 872 F.3d at 1204 (citation omitted), but he fails even to argue such here. Rather, Movant argues that § 2D1.1 is inapplicable because the two firearms were unloaded. This argument fails for two reasons.

First, Movant's assertion that the firearms were unloaded is not supported by the record. Special Agent Vanderberg did not testify that, "I don't believe that the firearm was loaded." (Doc. 555, p. 1); *see, e.g.*, (Doc 517, pp. 6–49). He testified that he could not "recall if those [firearms] were actually loaded. The only loaded weapon that I remember was the .9 millimeter in the shed." (Doc. 517, pp. 42–43). The PSR presented to the Court states that two "loaded .22 caliber rifle[s]" were found in the residence. (Doc. 492, ¶ 26). Second, assuming for the sake of argument that the .22 caliber rifles were unloaded, there is no law, in the sentencing guidelines or the Eleventh Circuit, that the enhancement cannot be applied based on an unloaded firearm.

---

[1] Movant also stipulated to owning a loaded 9mm pistol. (Doc. 458, p. 12). Agents found this firearm amongst "dog-related evidence" in a shed on the property. (Doc. 517, p. 22). The Court declined to apply the enhancement based on this firearm because it was found in a shed amongst dog-fighting paraphernalia, not drug paraphernalia. (*Id.*, pp. 59–60, 64–65).

"While other facts, such as whether the firearm is loaded, or inside a locked container, might be relevant to negate a connection, there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened." *United States v. Carillo-Ayala*, 713 F.3d 82, 92 (11th Cir. 2013). "The firearm's *potential* use is critical." *Id.* "A firearm can facilitate a drug offense by emboldening the defendant who could display or discharge the weapon." *United States v. Santos-Santana*, 2022 WL 17973602, at *8 (11th Cir. 2022) (citing *Carillo-Ayala*, 713 F.3d at 96). In this case, for example, it was enough for Movant to have possessed a firearm that he could have used in the course of a drug trade, for example, by brandishing the firearm to scare off any robbers, assailants, or rival drug distributors.

Because there is no law that § 2D1.1 cannot be applied to an unloaded firearm, Movant's counsel cannot have been ineffective for failing to make such an argument. Instead, Movant's counsel made a strategic decision, while acknowledging that he was at a legal disadvantage, to argue that the .22 caliber rifles were not used to facilitate the offense because they may have been unloaded and were possessed by another person. (Doc. 517, pp. 62–64). The Court ultimately disagreed with Movant's counsel and determined that Movant had not shown a connection was clearly improbable. Counsel's decision not to make an argument that is not supported by the law cannot be deemed to be deficient. As such, there is no basis for finding ineffective assistance on this ground.

B. *Role in the offense enhancement*

Movant argues next that his counsel was ineffective for failing to argue that the role enhancement cannot apply under § 3B1.1(c) comment n.4. (Doc. 542, p. 5). Movant directs the Court to language that the "adjustment does not apply to a defendant who merely suggests

committing the offense" and argues that "suggesting" was all he was doing in this case. U.S.S.G. § 3B1.1 comment n.4; (Doc. 555, p. 2). The record, however, Does not support this argument.

According to the comment note Movant cites, factors the court should consider in applying the role enhancement include:

> the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U. S. S. G. § 3B1.1 comment n.4.

Special Agent Vanderberg testified at sentencing that Movant was "directing [his girlfriend, Ms. Holmes] to, um, also conduct drug transactions for him in his absence." (Doc. 517, p. 11). Special Agent Vanderberg testified next that Movant called Ms. Holmes to "get a bag, to look under the sink, and to put it inside the bag and weigh it to approximately 57 grams and then provide it to another associate identified as 'T' when they came by." (*Id.*, p. 12). Movant's counsel objected to Special Agent Vanderberg's use of "directed" in each of these statements. (*Id.*, pp. 11–12). Special Agent Vanderberg testified further that Ms. Holmes proffered previously the scope of her relationship with Movant, and how it "turned into . . . [Movant] utilizing her apartment to store and distribute narcotics." (*Id.*, p. 18). The Court overruled Movant's counsel's hearsay objection to this evidence.

Following the Government's and Movant's examination of Special Agent Vanderberg, the Court questioned Special Agent Vanderberg specifically on how Movant directed Ms. Holmes. (*Id.*, p. 46). Special Agent Vanderberg reiterated his testimony as to the call between Movant and Ms. Holmes and stated that call "was the only direction that I know of." (*Id.*, p. 46). The Court

8

then instructed the Government "to tell me why you think evidence of one direction, one instruction, to [Ms. Holmes] makes [Movant] an organizer, leader, supervisor . . . ." (*Id.*, pp. 49–50). The following exchange occurred:

> [The Government]: You have the one intercept where he -- we've talked about it a couple times -- where he says -- he directs her to put it in the bag or push it down in the bag. That's not the only thing we have here on the role enhancement. He was storing the drugs at her apartment. So you've not only got the cocaine that was seized under the sink that he was controlling. He was using her as a vehicle. It's common sense. And Your Honor is very familiar with drug trafficking organizations. Why would Mr. Davis want to keep all those drugs at her apartment? It's to avoid detection. So he's using her as a vehicle to keep the drugs there to try to avoid law enforcement detection. The Court will recall Bryanna Holmes, she was not a drug trafficker before entering this case. And it was through her relationship with Mr. Davis that she got wrapped into this whole thing. Ironically, she was studying veterinary science or something like that.
>
> The Court: I recall her testimony. I recall it all.
>
> [The Government]: Right
>
> The Court: But what I'm getting at, though, is – I guess what I'm getting at is I'm trying to be consistent, and I'm trying to make sure that whatever I do doesn't set terrible precedence down the road. But every time two people are in a conspiracy, a lot of times they're just co-conspirators. They're just co-conspirators. I mean, we --
>
> [The Government]: He's storing drugs at her apartment. He directed her to move the drugs. There is also, Agent Vanderberg mentioned, him storing drugs on other occasions at her apartment. And just the nature of their relationship. These aren't two drug dealers who happened to be sharing a property. This is a woman who is in no way involved but for him and his control over her.
>
> (*Id.*, pp. 50–51).

Movant's counsel responded at length, arguing that: (1) Movant was not directing Ms. Holmes, but they were simply in a relationship; and (2) Movant was simply involved as a co-conspirator in the overarching conspiracy, not a distributor. (*Id.*, pp. 52–58).

Movant's contention that Special Agent Vanderberg testified that Movant "merely suggested" that Ms. Holmes give drugs to "T" is unsupported by the record. (Doc. 555, p. 2). And Movant's argument that counsel was ineffective for specifically informing the Court about the sentencing commentary language is unpersuasive. (*Id.*). Counsel's conduct was not deficient in arguing that the enhancement "does not apply to a defendant who merely *suggests* committing the offense" when: (1) there is no testimony from Special Agent Vanderberg that Movant was merely suggesting Ms. Holmes move or sell drugs; (2) counsel repeatedly objected to Special Agent Vanderberg's testimony; and (3) counsel argued at length the enhancement should not apply because of the nature of Movant's and Ms. Holmes' relationship. The record shows that counsel made the appropriate arguments regarding the enhancement, but that the Court rejected those arguments based on the evidence. As such, there is no basis to deem counsel's performance deficient in this area.

C. *Forfeiture action*

Movant argues last that his counsel was ineffective for "fail[ing] to petition the Court to expand the scope of counsel's representation to include the forfeiture proceeding after promising to do so." (Doc. 542, p. 6) (cleaned up). This ground is not cognizable under Section 2255, however. Section 2255 by its terms applies to custody and the right to be released from custody:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

When presented with the question of whether "a prisoner who does not request a release from custody but only a reduction in the amount of restitution," the Court of Appeals for the Eleventh Circuit has held that the plain language of the statute does not authorize Section 2255 to "be utilized by a federal prisoner who challenges only the restitution portion of his sentence because § 2255 affords relief only to those prisoners who 'claim the right to be released' from custody." *Blaik v. United States*, 161 F.3d 1341, 1342–43 (11th Cir. 1998). Necessarily then, Section 2255 cannot be utilized as a vehicle for a challenge pertaining to a forfeiture action. *E.g.*, *Ihm v. United States*, 2020 WL 919629, at *4 (M.D. Fla. Feb. 26, 2020) ("As with restitution claims, a challenge to forfeiture is outside the scope of a § 2255 proceeding because § 2255 affords relief only to those prisoners who claim the right to be released from custody."); *see also Tarabein v. United States*, ly2021 WL 5167294, at *7 (S.D. Ala. Nov. 5, 2021) (collecting cases). Movant cannot "backdoor" any challenge to the forfeiture action through this ineffective assistance claim because the relief for this ground is not relief from a custodial sentence. As such, this claim of ineffective assistance of counsel is not cognizable under Section 2255.[2]

---

[2] Additionally, there is no factual basis for Movant to challenge the forfeiture action because he voluntarily forfeited any possessory rights to the subject in the plea agreement, the validity of which Movant does not challenge. (Docs 458, pp. 9–10; 542, p. 6; 555, p. 3).

**II.      Movant is Not Entitled to an Evidentiary Hearing.**

No evidentiary hearing is needed to resolve Movant's Section 2255 motion. Movant has the burden to establish the need for an evidentiary hearing, and the Court is not required to hold an evidentiary hearing where the record makes "manifest the lack of merit of a Section 2255 claim." *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984) (citation omitted). As discussed above, "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Rosin v. United States*, 786 F.3d 873, 877–78 (11th Cir. 2015) ("[A]n evidentiary hearing is unnecessary when the petitioner's allegations are affirmatively contradicted by the record.") (internal quotations and citations omitted). Therefore, no evidentiary hearing is necessary.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

If a court denies a collateral motion on the merits, this standard requires a petitioner to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Movant has not met this standard, and, therefore, a certificate of appealability in this case should be denied.

## CONCLUSION

For the reason discussed herein, it is **RECOMMENDED** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 542) be **DENIED**. It is further **RECOMMENDED** that a certificate of appealability be **DENIED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20) PAGES. See M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 17th day of October, 2025.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge